

# AGREEMENT

## BETWEEN

## CROWLEY MARINE SERVICES, INC

## AND

## INTERNATIONAL ORGANIZATION OF
## MASTERS, MATES & PILOTS
## PACIFIC MARITIME REGION

# 2000 - 2004

**MASTER AGREEMENT**
**Between**
**CROWLEY MARINE SERVICES, INC.**
**and**
**INTERNATIONAL ORGANIZATION OF MASTERS, MATES AND PILOTS**
**PACIFIC MARITIME REGION**

The rules contained herein constitute an Agreement between CROWLEY MARINE SERVICES, INC., hereinafter referred to as the "Employer," and the INTERNATIONAL ORGANIZATION OF MASTERS, MATES AND PILOTS, Pacific Maritime Region, hereinafter referred to as the "Union," governing wages, hours, and other conditions of employment on the vessels of the Employer.

## RULE 1 - RECOGNITION

1.01    The Employer recognizes the Union as the representative of those Masters and Chief Mates who have chosen to be represented by the Union as well as Second Mates until and unless they have been promoted to a regular Chief Mate position.   The promoted Second Mate may at anytime during the next six (6) calendar months, elect to change his representation status from Union to Administrative.  This change in status, if so elected, will be permanent.

All newly hired Masters and Chief Mates will begin their employment as Union represented employees for their first thirty-one (31) days of employment.  Those who choose to make a change of status from Union to Administrative representation must submit that change to the Employer within  five (5) days following the thirty-one (31) day period unless they are on a voyage. The election to change status in this case must be made within seven (7) days of their return to their home port.  This change in status, if so elected, will be permanent.

Due to work opportunity fluctuation, situations may occur in which Administrative Chief Mates may occupy Second Mate billets.  No change in representation status will be required in this event.

1.02    The Employer agrees that for the life of this Agreement it will not be a participant in or contribute any assets, equipment under their control, nor employees to any company, partnership, or joint venture which intends or is intended to compete with or replace the tug, barge, and towing services which are presently offered or have been offered in the past by the Employer or which would have the effect of reducing the amount of work available to the bargaining unit.

## RULE 2 - HIRING PROCEDURES

2.01    The Employer recognizes the Union as a primary source of obtaining employees in the classifications covered by this Agreement, and shall adhere to the terms and provisions of this rule in the hiring of licensed deck officers.

2.02    In the event that an open position cannot be filled from the Employer's deck officer seniority roster, and the Union cannot provide a qualified and satisfactory deck officer from

1

the hiring list when requested, then the Employer may employ from any source it chooses, but shall give preference to applicants who are presently or have previously been employed in the industry.

2.03    The Employer shall without fail notify the Union in writing, within three (3) working days, excluding weekends and holidays, of the name and date of hire of all new deck officer employees.

2.04    In employing such deck officers, the Employer may reject an applicant that the Employer reasonably deems to be unsatisfactory.  If the Union feels any such rejection to have been unjust, the Union shall have the right to appeal the rejection in accordance with the disputes provisions of this Agreement.

## RULE 3 - UNION MEMBERSHIP

3.01    The Employer will furnish each of the new employees, a copy of the appropriate Union membership information package on or before the employee's first day of work.  The Union agrees to provide copies of such forms to the Employer for this purpose. Every employee covered by this Agreement shall, within thirty-one (31) days after employment with the Employer or within thirty-one (31) days after the signing of this Agreement, whichever is later, be or become a member of the Union and shall thereafter as a condition of continued employment tender the dues and initiation fees uniformly required as a condition of membership except as provided in Rule 1. Any employee failing to conform to this rule shall be subject to discharge.    The Union's request for dismissal of an employee for noncompliance with this rule shall be furnished the Employer in writing.

3.02    The Employer agrees to deduct from the wages of such of its employees as shall authorize in writing all dues, reinstatement fees, and initiation fees hereafter becoming due from such employee to the Union, and to transmit the money so deducted to the Union. Any employee desiring to have such deduction or deductions made shall sign a proper assignment form requesting such deduction from his pay.  Upon submission of such signed form to the Employer it shall be honored in accordance with its terms. Deduction of dues for any month earlier than the current month shall be based on a written authorization from the employee which expressly authorizes such deduction of back dues. All amounts deducted in accordance with this rule shall be forwarded by the Employer to the office designated in writing by the Union.

## RULE 4 - NONDISCRIMINATION

4.01    The Employer shall not discriminate against any employee for his activity in behalf of or membership in the Union.

4.02    The Employer and the Union warrant that all employment matters, to include but not be limited to, compensation, selection, benefits, transfers, layoffs, and return from layoff, will be administered without regard to race, color, religion, sex, national origin, age, marital status, the presence of a non-job related disability or whether an individual is a disabled veteran or a veteran of the Vietnam Era. All laws and regulations required in agreements of this character are hereby incorporated by this reference, including to the extent applicable, if

2

any, provisions of 38 U.S. Code 2012, Executive Orders 11246, 11375, 11758, 11701, and 12086, as amended and any subsequent executive orders relating to equal opportunity for employment on government contracts.

4.03    The Employer and the Union each warrant to the other that each will comply with its respective obligations pursuant to law in the implementation of this Agreement.

4.04    Where the masculine or feminine gender has been used in any job classification or in any provision in this Agreement, it is used solely for the purpose of illustration and shall not in any way be used to designate the sex of the employee eligible for the position or the benefits of any other provision.

4.05    The Employer and the Union agree that sexual harassment of any nature is strictly prohibited.

## RULE 5 - DISCIPLINE

5.01    It is recognized that the Employer has the right to discharge, suspend, demote, or reprimand an unsatisfactory employee; provided, however, that the Union shall have the right to appeal any such action in accordance with the provisions of Rule 18, Settlement of Disputes.

5.02    An employee scheduled for a hearing by the Employer wherein the employee will be advised of disciplinary action against him shall be granted up to ten (10) days to secure Union representation at such hearing.

5.03    Any employee discharged, suspended, or demoted for disciplinary reasons shall be furnished, in writing, the reasons for such action and, in the event of discharge, shall be paid in full within forty-eight (48) hours from date of such discharge excluding weekends and holidays.

## RULE 6 - SENIORITY

6.01    The Employer shall establish and maintain a current roster of all deck officers employed by that Employer under this Agreement and arranged in order of the deck officers' seniority with the Employer and shall furnish the Union with a copy annually.  The Employer shall also furnish the Union with the information necessary to update the deck officers' seniority roster.

6.02    The seniority date for those employees who were employed by the Employer in a deck officer capacity on or before January 31, 1981 shall be the date of first employment with the Employer in any capacity, licensed or unlicensed.

6.03    The seniority date for those employees who were not employed by the Employer in a deck officer capacity on or before January 31, 1981 shall be established as of the employee's first day of service as a deck officer with the Employer or, date of joining the union, whichever is later.  Provided, however, that the Employer shall not be required to strictly adhere to the seniority provisions of this rule in laying off or rehiring deck officers until satis-

factory completion of a probation period of ninety (90) working days or one hundred eighty (180) calendar days, whichever shall first occur.

6.04    Seniority shall terminate for any employee who quits, is discharged for cause, is on continuous layoff for twelve (12) months or more, or who fails to report for work within fifteen (15) days after receipt of written notification to do so (or such longer time as the Employer may allow in cases of undue hardship).  It is the obligation of each employee to keep the Employer and the Union advised of his current home address and telephone number.

6.05    No employee shall lose seniority standing because of a leave of absence not exceeding six (6) months (or such longer period as is mutually agreed to by the Employer and the Union), provided such leave has been approved in writing by both the Employer and the Union.  This section shall also apply to military leave, provided the employee applies for reinstatement following completion of military service within the time set by law.

6.06    While the parties recognize that it is difficult to strictly apply the principle of seniority in the towing industry due to variations in the length of voyages and the different types of skills required, they also recognize that fairness demands that any deviation from the application of seniority principles be justifiable and based upon reasonable necessity.

Subject to these considerations and the necessity for the reasonable exercise of managerial discretion in the selection of Masters, it is agreed that seniority shall govern with respect to promotions, demotions, layoffs, and rehiring.

6.07    When layoffs occur, except as provided in Rule 6.03 above, the last deck officer hired shall be the first laid off or demoted, and when recalled to work, the last demoted or laid off shall be the first promoted or rehired.  It is further agreed that Masters and Chief Mates covered by this Agreement shall be laid off in a ratio comparing the number of Union represented deck officers with the number of Administrative deck officers.

6.08    Any deck officer who has established seniority with the Employer and who leaves the employment of the Employer to accept full-time employment as an official of the Union shall retain his seniority date with the Employer during the period he holds such Union position. Likewise, a deck officer transferred into a non-bargaining unit position with the Employer shall retain his seniority date with the Employer while employed in the non-bargaining unit position, provided he is in good standing with the Union at the time of his transfer.

**RULE 7 - VISITATION**

7.01    Upon notification to the Employer, authorized representatives of the Union shall be allowed to go on the Employer's property and on board vessels with employees aboard covered by this Agreement at reasonable times while at the dock.  The Union agrees that the Employer is absolved from all accidental injury claims resulting from any accident involving such representative while on the property or on board vessels of the Employer wherever the vessel or property is located.

4

## RULE 8 - COMPLIANCE WITH LAW

8.01    Vessels operating under this agreement shall be crewed with appropriate licensed and unlicensed personnel to be in compliance with Laws and Regulations, it shall be the responsibility of the Owner, Charterer, or Managing Operator to ensure that appropriate manning requirements are met.

8.02  The Employer and the Union agree that in the event any provisions of the Agreement is or shall at any time be held as being in contravention of any laws, rules or regulations, such provision shall be deemed severed from this Agreement and the remainder of the Agreement shall remain in full force and effect.  The Rules which are in contravention of such laws or regulations shall be renegotiated by the parties in order that there will be no such contravention.  If the parties are unable to renegotiate any such rule, the matter shall be settled as a grievance under Rule 18.

## RULE 9 - MILEAGE ALLOWANCE

9.01    Employees required to use their personal auto for transportation between Employer designated home terminal and the job site shall be paid the maximum mileage allowance which is deductible for operation of passenger automobiles according to regulations of the Internal Revenue Service.  Mileage shall commence and terminate at the home terminal.

## RULE 10 - HOLIDAYS

10.01 At Crowley Marine Services, Inc. the following ten (10) days are observed as holidays:

> New Years Day (January 1)
> Martin Luther King's Birthday (Federally observed)
> Washington's Birthday (Third Monday in February)
> Memorial Day (Last Monday in May)
> Independence Day (July 4)
> Labor Day (First Monday in September)
> Thanksgiving Day (Fourth Thursday in November)
> Day after Thanksgiving (Fourth Friday in November)
> Christmas Day (December 25)
> Employee Birthday Holiday

10.02  When the employee is active but not working (between voyages), he will receive a paid holiday (straight-time) if he has worked during the last thirty (30) days, or if the supervisor approves a paid holiday.

10.03  OCEAN ADDENDUM:  If the employee works during an observed holiday, he will receive double time pay (exclusive of ATO).

INSIDE ADDENDUM:   If an employee is required to work on a paid holiday, in addition to the full day's pay, he shall be paid one and one-half (1½) hour for each hour worked on the holiday.

5

## RULE 11 - SHIPWRECK COMPENSATION

11.01  Employees will be reimbursed in cash the replacement value of personal effects, instruments, and equipment resulting from shipwreck, stranding, sinking, burning, or collision of the vessel in an amount not to exceed three thousand five hundred dollars ($3500.00) for each deck officer.

11.02  Each employee must provide the Employer with an itemized list of his losses including replacement value.  Any disputed items will be settled in accordance with the rule of this Agreement dealing with Settlement of Disputes.

## RULE 12 - HEALTH AND SAFETY

12.01  The health and safety of crew members shall be reasonably protected.  The Employer agrees to provide without charge, or deposit, white sheets, pillow slips, bath towels, paper hand towels, springs, mattresses, blankets, bedspreads, and soap to insure sanitary and healthful conditions.  Mattresses and quarters shall be fumigated whenever requested by the Union.  Crew members shall be responsible for and turn in soiled furnishings before being issued clean ones weekly, and upon termination or transfer, employees will turn in such linens, towels and blankets as have been issued to them, such fact to be noted on their time sheet as a clearance.  Failure to turn them in shall be noted on said time sheet and the value of such articles as are missing shall be deducted from their final check or pay.  Clothes washers and dryers will be installed on all vessels when it is practical to do so.  All double-crew and all Ocean and Coastwise vessels shall be equipped with U. S. Coast Guard approved survival suits.  Survival suits shall be made available for single-crew vessels dispatched outside the harbor.

12.02  The Employer agrees that a reasonable supply of fresh fruit and vegetables in season, U. S. grade choice or better meats, poultry, and seafood choices, butter and fresh milk will be provided to insure a balanced diet.  Coffee and night lunches will be provided during night watches.  The Master shall be authorized to purchase required commissary stores in out ports.

12.03  The noise level on all vessels in the crew's living area, mess areas, and wheelhouse shall be held to the lowest practicable level.

12.04  There shall be no lashing or unlashing of cargo while vessel or tow are making way.

12.05  Employees who violate safety rules and other reasonable written rules established by the Employer shall be subject to disciplinary action.

12.06  Before returning any vessel to service following an extensive lay up for repairs, the Employer will perform the following:

    a.    A general cleanup of the vessel and of the engine spaces;
    b.    Assure proper operation of the hot water, heating, and ventilation systems;

c.  Assure proper condition of life jackets, life rafts, medical supplies, first-aid kits, fire extinguishers, and survival suits.

12.07  Crew members will not be required to work cargo or lash or unlash rail cars if proper lighting is not provided.  When adequate lighting is not provided in cargo holds no crew member shall be required to go below the main deck of any barge unless accompanied by another person; provided, however, when inspecting or cleaning tanks, one (1) of two (2) men shall be stationed topside to tend lines and keep watch.

12.08  All vessels operating under the scope of this Agreement shall be equipped with portable fire and bilge pumps.

## RULE 13 - CONDITIONS NOT SPECIFICALLY COVERED

13.01  In the event operating conditions or service requirements arise due to length of voyage or other reasons not specifically covered by this Agreement, the parties agree to confer immediately for the purpose of arriving at a mutually satisfactory Special Agreement covering such operation.

## RULE 14 - SCHOOL PROGRAMS

14.01  The Employer will reimburse each eligible deck officer who successfully complete governmental required and/or Company required courses or seminars. Such courses include but not limited to: CPR, HAZWOPPER, HAZMAT, GMDSS, ARPA, TPIC, STCW and first aid. Courses or seminars that are not conducted by the company must be pre-approved by the completion of an application for assistance form and then signed/approved by the Manager of Marine Operations and Training Manager. Courses of study leading to an upgrade of the required U.S. Coast Guard license will be reimbursed when an employee is promoted to a permanent assignment requiring said license.

To be eligible for participation in the program, the candidate must have been on the Employer's payroll for one (1) year and must be on the active payroll at the time of request and participation in the program.

A.  Eligibility and selection of candidates shall be as follows:

1.  To be eligible for participation in the program, the candidate must have been on the Employer's payroll for one (1) year and must be on the active payroll at the time of request and selection for participation.

2.  Selection for participation in the program requires:

a.  Acceptance of the applicant by an approved school.

b.  Approval of the application for assistance by:
- Manager of Marine Operations
- Manager of Training

7

14.02  Reimbursement will include:

A.    Employees who live within fifty (50) miles of school:

  1.    Actual mileage driven each day from home to school and back at the mileage rate specified in Rule 9.

  2.    $7.50 per day subsistence.

  3.    Actual tuition charged by the school, documented by receipt.

B.    Employees who live fifty (50) miles or more from school:

  1.    Actual mileage driven from home to school, not to exceed one (1) round trip per week at the mileage rate specified in Rule 9.01.

  2.    Lodging and subsistence for each day and night away from home in a reasonable amount, provided that all incurred expenses must be documented by receipt.

  3.    Actual tuition charged by the school, documented by receipt.

Evidence of the new license must be presented to the Operations Manager and Human Resources Department for reimbursement.

14.03  It is anticipated that most students will attend school on their earned accumulated time off.  No compensation other than vacation or accumulated time is paid while attending school.

14.04  Training conducted by the Employer will be compensated eight (8) hours at the maintenance and repair rate.

## RULE 15 - HEALTH AND BENEFITS PLAN

15.01  The Employer agrees to contribute to the MMP Health and Benefit Plan, effective May 1, 2000, the purpose of which is to provide hospital, medical, dental, vision care, and life insurance benefits for employees, their dependents, and beneficiaries covered by this Agreement.  The benefits and administration of the Trust shall be established and maintained by the Board of Trustees in accordance with the provisions of the Trust Agreement signed by the parties to this Agreement.

15.02  Employer contributions to this Plan shall accrue according to the following schedule:

| Effective Date | Per 8-Hour Day | Per 12-Hour Day | Per Bimonthly Period |
|---|---|---|---|
| January 1, 1999 | $54.6666 | $82.00 | $820.00 |

8

15.03  Employer contributions as set forth above shall accrue for each bargaining unit employee for each day for which the employee receives compensation, but not in an amount greater than the bimonthly amount for any employee in any bimonthly period. The term "day" as used herein means a period of twenty-four (24) hours which commences at the employee's normal starting time of work.  The twelve (12) hour day contribution rate shall apply to employees regularly working twelve (12) hours in a twenty-four (24) hour period and the eight (8) hour day contribution rate shall apply to employees working less than twelve (12) hours in a twenty-four (24) hour period.  Vacation pay, sick pay, and accumulated pay disbursed to an employee shall constitute compensation for the purpose of this rule and shall generate corresponding Employer contributions in the amounts specified in applicable regulations of the Board of Trustees, which amounts are not necessarily subject to the bimonthly maximum contributions set forth above. The due date for payment of accrued Employer contributions shall be determined by regulation of the Board of Trustees.

15.04  By entering into this Agreement the Employer a) adopts and agrees to be bound by all of the terms of the Trust Agreement as heretofore and hereafter lawfully amended, b) ratifies and approves the appointment of the Employer Trustees who are now incumbent or who may hereafter be appointed in accordance with the provisions of the Trust Agreement, and c) adopts and agrees to be bound by rules and regulations now existing or hereafter adopted by the Board of Trustees pertaining to the operation and administration of the Trust, including but not limited to rules establishing due dates for contributions to the Trust, imposing liquidated damages for late contributions, providing for audit by the Trust auditors of Employer contributions to the Fund and providing access to Employer's books and records for that purpose, providing for payment by the Employer of costs and attorneys' fees if counsel are employed to collect delinquent contributions or otherwise enforce the Employer's obligation and providing for the venue for suits and proceedings to which the Trust is a party.  In agreeing to make the contributions and not to maintain defined benefits.  The Employer's liability is hereby limited to the making of those contributions set forth in this rule at the times specified by the Board of Trustees together with costs and penalties relating to his own delinquency which may occur in regard to such payments.

15.05  The Union and the Employer may, at any time, enter into a supplemental agreement whereunder the amounts prospectively to be paid pursuant to this rule are to be reduced in order to apply such funds to another employee benefit trust fund or funds if not needed to support the benefits established by the Trustees of the MMP Health and Benefit Plan.

15.06  Effective April 1, 2001 and on April 1 of each succeeding year thereafter, throughout the term of this Agreement the Employer shall contribute an additional amount up thirty dollars ($30.00) per month per year when determined by the Board of trustees it is necessary to maintain the present schedule of benefits.  This annual amount is cumulative from year to year.  Increased contributions in excess of the above stated amounts shall be accomplished by a reduction of the Employees wages.

## RULE 16 - PENSION PLAN AND BONUS PAY

16.01  The Employer agrees to make bimonthly contributions to the International Organization of Masters, Mates and Pilots Individual Retirement Account Plan, for the benefit of each bargaining unit employee, in accordance with the following schedule:

9

| Effective Date | Per 8-Hour Day | Per 12 Hour Day | Per Bimonthly Period |
|---|---|---|---|
| April 1, 1997 | $28.3333 | $42.50 | $425.00 |

16.02  In addition to the above contributions the Employer agrees to contribute to the aforesaid basic pension plan an amount equal to three percent (3%) of the employee's base wages.  For purposes of this rule and Rule 16.01 above, all ATO shall constitute compensation and shall generate corresponding contributions to the Pension Plan.

16.03  The purpose of aforesaid pension contributions is to establish or continue a pension program based on a money purchase principal, without intent to establish a benefit schedule or to assume unfunded liability for any level of benefits.

16.04  By entering into this Agreement, the Employer adopts and agrees to be bound by and a party to the Individual Retirement Account Plan; to be bound by all of the rules and regulations now existing or hereafter adopted by the Board of Trustees; and ratifies, approves and accepts the appointment of the Employer Trustees who are now incumbent or who may hereafter be appointed in accordance with the provisions of the Trust Agreement.

16.05  In addition to the contribution hereinabove set forth, the Employer shall continue to make contributions to the Northwest Marine Retirement Trust in the amount of six dollars ($6.00) per year for each employee covered by this Agreement and compensated for at least three hundred sixty (360) hours during that period.

16.06  Employees covered by this Agreement may contribute additional money to their I.R.A.P. through regular payroll deductions, if they so desire, provided they authorize same in writing to the Employer.  Any money so deducted shall be for a fixed amount per pay period and this amount may not be changed for a period of one (1) year from the date of the first deduction. However, employees may cancel these self-pay deductions at anytime.

16.07  Deck Officers, excluding Trainee Mates, represented by the MM&P will be eligible for a performance bonus commensurate with performance bonuses paid to the Administrative Masters and Mates and beginning with performance bonuses that may be paid in 2001.  The development of the bonus program, administration, performance award criteria, bonus payment amount and decision to pay a bonus or not is at the sole discretion of the Company.  This bonus program will not be subject to the grievance procedure.

## RULE 17 - STOPPAGES OF WORK

17.01  It is agreed that during the term of this Agreement there shall be no strikes, picketing, work stoppages, slowdowns, respecting of other picket lines except as set forth in Rule 17.03, or other disruptive activity by the Union or by any employee, and that there shall be no lockout by the Employer.

17.02  The Union agrees that it will not aid, abet, sanction or encourage any conduct which would violate the "stoppage of work" provisions of this Agreement, and further agrees to

10

make an immediate, reasonable good faith effort to prevent or stop any such conduct. Failure of the Union or any employee to cross any picket line established at the work site shall constitute a violation of this Agreement. Under no circumstances shall the Union be liable for the acts of individual employees or of its members; nor shall the International Union be responsible for the actions of its local membership group.

17.03  It shall not constitute a violation of this Agreement for the Union or any employee to refuse to cross any lawful picket line which has been established by this Union or by any other geographic region of the Union.

The Union agrees that it will not use this rule for the purpose of circumventing the general no-strike obligations.

17.04  The parties have the right to proceed directly to court for any or all legal relief for any breach of this rule.

17.05  In the event of a lockout, the Union retains the right to terminate this Agreement and any and all agreements which incorporate its terms. In the event the Union sanctions any strike or work stoppage, the Employer retains the right to terminate this Agreement and any and all agreements which incorporate the terms of this Agreement.

## RULE 18 - SETTLEMENT OF DISPUTES

18.01  It shall be the firm intention of the parties to settle any dispute or grievance arising out of this Agreement on a local level between the parties.

18.02  All claims growing out of the interpretation or application of the Agreement or matters concerning discharge, discipline, rejection, or seniority shall be presented by the aggrieved employee or the Union within thirty (30) calendar days after the date of the occurrence giving rise to the dispute or within thirty (30) calendar days after the aggrieved employee knew or reasonably should have known of the occurrence giving rise to the dispute. Any claim not presented within this time shall be deemed waived.

18.03  If the dispute or grievance cannot be settled on a local basis, as defined in Rule 18.01, the Union or the Employer may notify the other within seven (7) working days to meet (excluding Saturdays, Sundays, and holidays) to settle the dispute. The Union or Employer may initiate a grievance at this step.

18.04  If the parties are unable to reach an agreement within seven (7) working days (excluding Saturdays, Sundays, and holidays) after their first scheduled meeting, either party may refer the dispute in writing to a Joint Conference Board consisting of two (2) members designated by the Employer and two (2) members designated by the Union. The Joint Conference Board shall meet and hear and decide, by majority vote, the dispute within three (3) working days (excluding Saturdays, Sundays, and holidays) after the dispute is referred to it.

18.05  In the event the Joint Conference Board deadlocks under Rule 18.04, such action shall be attested and dated by the Joint Conference Board. In such event, either party may

refer the dispute to arbitration by written notice postmarked to the other within three (3) working days (excluding Saturdays, Sundays, and holidays) of such deadlock. If the parties cannot agree on the selection of an arbitrator within three (3) working days (excluding Saturdays, Sundays, and holidays), the Federal Mediation and Conciliation Service shall be requested to furnish a list of seven (7) names. The arbitrator shall then be selected by each side alternately deleting one (1) name from the list until one (1) name remains. The first deletion shall be determined by lot and proceed alternately thereafter. The parties agree that a hearing will be scheduled within thirty (30) days after selection of the arbitrator. Expenses for the arbitrator shall be borne equally by the parties. Arbitration proceedings shall be conducted in accordance with the rules of the Association of American Arbitrators. The decision of said arbitrator shall be rendered within forty-five (45) days following conclusion of the hearing. The decision of said arbitrator shall be final and binding on the parties.

18.06  The arbitrator shall have no jurisdiction to amend, modify, or in any way alter the provisions of this Agreement.

18.07  The time limits referred to in this section may be extended by mutual agreement.

## RULE 19 - MAINTENANCE AND CURE

19.01  When a crew member is entitled to daily maintenance under the federal doctrine of maintenance and cure it shall begin at the end of the period of which "unearned wages" are payable and shall be at the rate of seventy dollars ($70.00) per day. Twenty-five dollars ($25.00) shall be deemed maintenance and forty-five dollars ($45.00) shall be deemed wage substitution. Except in hardship cases, the Employer shall not be required to make payments under this rule more often than semi-monthly. The Employer recognizes the right of the Union to intercede on questions arising under this rule.

19.02  The Employer will maintain records of injuries in the service of the Employer which cause loss of time and will furnish a summary of such information to the Union on a periodic basis.

19.03  The Employer will continue to make contributions for employees to the specified health and benefit and retirement trusts in the amounts defined in Rules 15 and 16 while such employee is entitled to unearned wages or maintenance as provided for in Rule 19.01.

## RULE 20 - MANAGEMENT RESPONSIBILITY

20.01  The Employer retains full and exclusive authority for the management of its operations. Except as expressly limited by other provisions of this Agreement, the Employer retains the right to direct the working force, including the hiring, promotion, transfer, discipline, or discharge of its employees; the adoption of regulations for the conduct of work procedures of its employees; and the assignment and scheduling of work. The Union reserves the right to intercede on behalf of any employee who feels aggrieved because of any exercise of the Employer's rights of management, and retains the right to process a grievance on behalf of any such employee pursuant to the dispute settlement provisions of this Agreement.

## RULE 21 - TERM OF AGREEMENT

21.01  This entire Agreement shall be in full force and effect from January 1, 2000, except as otherwise stated, to and including December 31, 2004, and shall continue in full force and effect from year to year thereafter, unless written notice of desire to terminate the Agreement is served by either party upon the other at least sixty (60) days prior to the date of expiration.

21.02  It is further provided that where no such termination notice is served, and the parties desire to continue said Agreement but also desire to negotiate changes or revisions in this Agreement, either party may serve upon the other a notice at least sixty (60) days prior to December 31, 2004 or December 31st of any subsequent contract year advising that such party desires to continue this Agreement but also desires to revise or change the terms or conditions of such Agreement.

21.03  If notice to amend is given as provided in Rule 21.02 then, after the expiration date of this contract, either party may terminate the same upon forty-eight (48) hours written notice to the other.  It is the express intention of Rule 21.03 that there shall be no strike, lockout, or unilateral change in terms or conditions of employment unless, except and until forty-eight (48) hours shall have elapsed after the giving of this written notice.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the ___1___ day of _August_, 2000, between:

CROWLEY MARINE SERVICES, INC.

INTERNATIONAL ORGANIZATION OF MASTERS, MATES AND PILOTS,
Pacific Maritime Region

By: Thomas P. Baldwin

By: Steven J. Demeroutis

By: James J. Macaulay

By:

13

**OCEAN AND COASTWISE TOWING AGREEMENT**
**ADDITIONAL PROVISIONS**
**BETWEEN**
**CROWLEY MARINE SERVICES, INC.**
**AND**
**INTERNATIONAL ORGANIZATION OF MASTERS, MATES & PILOTS,**
**PACIFIC MARITIME REGION**

In addition to the common provisions hereinbefore set forth, the following additional provisions shall apply to all operations outside the geographic scope of the Inside Towing Agreement, or the scope of any job site agreement which the parties may from time to time enter into. In the event of a conflict between the common provisions of this Agreement herein before set forth and these additional provisions, the additional provisions shall govern.

## RULE 1 - PROBATIONARY PERIOD

1.01    The Employer shall not be required to strictly adhere to the seniority provisions of Rule 6 in laying off or rehiring deck officers establishing seniority under Rule 6.03 until satisfactory completion of a probation period of ninety (90) working days or one hundred eighty (180) calendar days, whichever shall first occur.

## RULE 2 - HOURS

2.01    Whenever practical the Employer shall give Employees at least 24 hours advance notice of the time they are expected to report for duty. Employees may be called to report at 08:00 or 12:00 noon. For the day of reporting Employees called at 12:00 shall receive one-half (1/2) day's pay and ATO, for reporting at 08:00 employees will be paid a full day's pay and ATO.

2.02    Eight/twelve hours shall constitute a day's work.  Crew personnel shall be divided into sea watches, each watch standing four/six hours on duty followed by eight/six hours off duty.  Two (2) such watches shall constitute a day's work, except as otherwise provided in this rule.

On a two (2) watch vessel, work will be performed in accordance with the following:

| | | |
|---|---|---|
| Master | 0600-1200 | 1800-2400 |
| Chief Mate | 0001-0600 | 1200-1800 |

On three (3) watch vessels, work will be performed in accordance with the following:

| | | |
|---|---|---|
| Master | 0800-1200 | 2000-2400 |
| Chief Mate | 0400-0800 | 1600-2000 |
| Second Mate | 0001-0400 | 1200-1600 |

1st Licensed Deck Officer – Floating
2nd Licensed Deck Officer – 0600-1200 – 1800-2400
3rd Licensed Deck Officer – 0000-0600 – 1200-1800

14

When deemed necessary by the Master, the Master will assume a non-watch standing role scheduling his 12 hours to suit operational needs. The Mates will assume a two (2) watch schedule. If necessary, the Master can schedule a Mate to this non-watch standing role. In no event are the licensed deck officers to exceed 12 hours in any 24 hour period in compliance with Title 46 US Code. Masters and Mates standing a 6/6 will not work outside of their watch hours.

2.03    The trainee mate rating shall not exceed a 180 day work period, provided all license requirements have been satisfied. The Company and Union will meet if it becomes necessary to extend a trainee mate's 180 day work period and may, by mutual agreement, extend the trainee mate's work period.

## RULE 3 - RATES OF PAY

3.01    The rates of pay of all employees covered by this Agreement shall be as set forth below, effective April 1, 2000:

|  | Per Month | Per 12 Hour Day | In Lieu* | Valdez In Lieu* | Penalty Rate |
|---|---|---|---|---|---|
| Master | $6,335.70 | $211.19 | 10%($21.12) | 5%($10.56) | $26.40 |
| Chief Mate | $4,670.70 | $155.69 | 5%($7.78) | 2.5%($3.89) | $19.46 |
| Second Mate | $4,233.30 | $141.11 | 5%($7.06) | 2.5%($3.53) | $17.64 |
| Trainee Mate | $3,701.40 | $123.38 | 5%($6.17) | 2.5%($3.08) | $15.42 |

*Paid only for each day worked.

Cargo Handling and Railcar Lashing  $16.26

| Repair Rates | Per 8 Hour Day | Per Hour Regular |
|---|---|---|
| Master | $256.00 | $32.00 |
| Chief Mate | $188.72 | $23.59 |
| Second Mate | $171.04 | $21.38 |
| Trainee Mate | $149.52 | $18.69 |

(Retro payment will be on straight-time only. In lieu will be paid effective upon ratification of the contract.)

Deck officers who are training (i.e. onboard the vessel) to upgrade their position in a supernumerary capacity only (extra deck officer to the crew) will be paid 5% less than the position to which they are upgrading, with the exception of Trainee Mates. For example:

>   Second Mates training as Chief Mates will be paid 5% less than the Chief Mate.
>   Chief Mates training as Master will be paid 5% less than the Master.

3.02    The daily rate of pay (base wages) shall be the same whether on a two (2) watch system or three (3) watch system.

15

3.03    An additional ten percent (10%) of base pay shall be paid to all deck officers on vessels while operating in the area North of latitude 58 12' North and West of longitude 136 38' West (Cape Spencer) including all of the Aleutian chain during the months of November, December, January, and February of each year.

3.04    Each paycheck or pay voucher shall include a clear breakdown showing the following:

> Gross pay
> Name and amount of each deduction
> Total accumulated dollars owing
> Net pay
> Holiday pay

Pay periods shall end on the 15th and on the last day of the month.  The Employer shall have eight (8) business days to process paychecks and make them available to the employee or designee.  Direct deposit into your bank, savings and loan or credit union will be available and the pay stubs will be sent via your usual check routing.

When a holiday falls within a payroll processing period, an additional day will be granted in the period to process payroll.

3.05    A draw shall be given any crew member requesting same in any outport.

3.06    Watches shall relieve each other for supper.   The Master shall designate the necessary relief for this purpose.

3.07    It is agreed between the parties, that on January 1, 2001 and January 1 of each succeeding year thereafter, Masters and Mates represented by the Union shall be granted wage increases commensurate with the annual wage increase granted to Administrative Masters and Mates.

3.08    When emergency service is performed for the immediate safety of the vessel, tow or crew, or for incidents such as collision, breakdown, standing to, and rendering aid to another vessel or parties in distress, such additional hours worked shall be paid for at the penalty rate of pay.

## RULE 4- ACCUMULATED TIME OFF

4.01    For each day worked aboard the vessel the employee shall accumulate one (1) day off with pay.

4.02    Arrival day shall be considered as a day at sea.  Deck officers on vessels arriving the day before a holiday shall be given the holiday off with pay.  Employees who are relieved before noon will receive one-half (½) day's pay and earn one-half (½) day of accumulated time off.  Employees who are relieved after noon shall receive a full day's pay and earn a full day of accumulated time off.  Employees may be required to work on arrival day, but no employee may be required to work or to remain aboard the vessel beyond midnight on the

16

day of arrival. (In an emergency situation, employees may be required to work beyond mid-night on arrival day.)

4.03    When lay-offs occur, employees shall have the option of taking such days off without pay, or taking such time off with pay until their accumulated hours have been used up. Accumulated time off with pay shall be taken at a time mutually agreed to between the Employer and the deck officer except that the Employer may, when required by Rule 4.05, schedule employees to take their accumulated time off with pay in accordance with Rule 4.05 (Common Provisions). Cash payment in lieu of time off will be paid to an employee only for proven personal emergency, when proper relief cannot be provided or when such employee severs his employment with the Employer. There shall be no cash payment in lieu of time off. Employees on accumulated time off shall not be rehired in the industry until all of such time has been exhausted. Accumulated time payments constitute full-time com-pensation for the number of unworked days covered by such payments and shall have the effect of disqualifying that number of days as days of unemployment for the purpose of determining eligibility for unemployment compensation. Employer will provide an employee ATO list quarterly to the Union.

4.04    Employees who have worked insufficient time to generate maximum employment contributions for welfare and pension plan purposes in a given bimonthly reporting period may draw any number of accumulated hours off from their accrued total as may be needed to maximize such contributions by the Employer.

4.05    Job assignment for each work opportunity will, insofar as is practical, be in the following order of preference:

1.  The most senior qualified employee who has exhausted all ATO provisions.

2.  The most senior qualified employee with least amount of ATO wages remaining.

## RULE 5 – CARGO HANDLING AND RAIL CAR LASHING

5.01    The cargo and rail car lashing handling rate shall be paid to any employee engaged in moving cargo, pumping ballast, trimming barges, tightening cargo, tightening rail car lashings, adjusting dunnage, cleaning cargo holds or recording cargo temperatures. This premium shall be in addition to all other compensation provided under this Agreement and shall be paid while such work is actually being performed, whether the employee is on watch or off watch at the time.

5.02    When performing cargo handling work all breaks of less than one (1) hour shall be considered work periods.

## RULE 6 – SUBSISTENCE AND QUARTERS

6.01    When employees are required to sleep ashore away from home due to repair or fumigation of the sleeping quarters or waiting for an assignment, actual hotel room, subsistence, and transportation expense will be paid by the Employer. The Employer reserves the right to arrange and pay for reasonable accommodations, subsistence, and

17

transportation for the employee. This rule shall not apply in the home port on Saturday, Sunday, or holidays when crew members are not working or required to be aboard.

## RULE 7 - TUG AND TOWBOAT WORK RULES

7.01    It shall be understood that the tugboat and its tow are a unit, and that by common practice the responsibility of making and breaking up the tow, mooring and unmooring, supervision of cargo loading and discharging, etc. is the duty of and shall be performed by the tugboat crew without payment of extra compensation.  Off watch personnel may be called at the discretion of the Master.   Other duties pertaining to the tow include the following:

a) Operation or checking of engines used for the purpose of operating and barge anchor windlass or capstans for anchoring, raising anchor, pumping bilges, operating light plants for safety of crew, bringing the barge alongside, or docking.

      1)  Raising or lowering anchor.

      2)  Preparation and installation of running lights or batteries.

7.02    The Master shall have the responsibility and the authority to call any off-watch personnel to assist in the operation of the vessel whenever, in his discretion, the conditions warrant it.

## RULE 8- RETURN TO HOME PORT

8.01    In the event any vessel is chartered by any branch of our military services or private interests or removed from service for any cause, including shipwreck, crew personnel shall be returned to the home port by air transportation.  Wages and subsistence shall be paid to the crew personnel while in transit to the home port.

8.02    The Employer shall designate the home port.  The Employer shall advise the Union in the event the designation of home port is changed.

8.03    A crew member employed on a vessel operating continuously away from its home port may request relief after ninety (90) days on three (3) watch system and sixty (60) days on two (2) watch system of service and as soon as practicable after being properly relieved will be allowed air transportation to the home port.

## RULE 9 - WAR RISK INSURANCE AND BONUSES

9.01    War risk insurance and war bonuses shall in addition to wages be provided by the Employer in accordance with the Federal Law.

## RULE 10 - FOREIGN ARTICLES

10.01  This Agreement shall be attached to and made a part of all foreign articles.

18

**RULE 11 - POSTED SAILING TIME**

11.01   When it is determined the vessel's stay in a safe port or moorage will exceed six (6) hours the sailing time shall be posted. The sailing time will be posted and entered in the Log Book by the Master within one-half (½) hour of his contacting the super cargo or customer's agent. Crew members not on watch or otherwise working shall be permitted to go ashore, but prior to so doing they shall notify a deck officer of their intent to leave the vessel and the probable time of their return. If after the sailing time is posted the vessel shall sail early the Employer shall be responsible for any expenses to rejoin the vessel, of the crew member who is left behind, including transportation, subsistence, lodging, base pay and accumulated time. The sailing time shall be maintained to reflect any extension in the original time posted in increments of not less than four (4) hours. Crew members shall report on board and be available for duty at least one (1) hour prior to the posted sailing time.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the _____ day of _____, 2000, between:

CROWLEY MARINE SERVICES, INC.

By:Thomas P. Baldwin

By: James J. Macaulay

INTERNATIONAL ORGANIZATION OF
MASTERS, MATES AND PILOTS,
Pacific Maritime Region

By: Steven J. Demeroutis

By:

19

**INSIDE TOWING AGREEMENT**
**ADDITIONAL PROVISIONS**
**BETWEEN**
**CROWLEY MARINE SERVICES, INC.**
**AND**
**INTERNATIONAL ORGANIZATION OF MASTERS, MATES & PILOTS,**
**PACIFIC MARITIME REGION**

This Agreement shall apply to all operations of CROWLEY MARINE SERVICES, INC. vessels operating within any harbor from Alaska to the Columbia River and not over two hundred (200) miles offshore between Cape Spencer and the Columbia River, including all tributary waters and transit of Columbia River.

## RULE 1 - TUG AND TUGBOAT WORK RULES

1.01    A tugboat and its tow are a unit and, by common practice, the responsibility of making and breaking up the tow and of mooring and unmooring is the duty of the tugboat crew, and shall be performed without the payment of extra compensation while on watch.

1.02    The Master shall have the responsibility and the authority to call any off-watch personnel to assist in the operation of the vessel whenever, in his discretion, the conditions warrant it. The Master may authorize the Mate to call any off-watch personnel to assist in the operation of the vessel whenever, in his discretion, the conditions warrant it.

1.03    The Master, being a representative of the Employer, has the overall responsibility for his vessel on or off watch. Along with this responsibility the Master has the necessary authority to insure that members of the crew perform the duties assigned them satisfactorily. The Master shall not be required to perform engine room maintenance or repairs, nor shall he be responsible for machinery failures or casualties that might occur.

## RULE 2 - HOURS FOR DOUBLE-CREW VESSELS

2.01    Crew personnel shall be divided into sea watches, each watch standing four/six hours on duty followed by eight/six hours off duty. Two (2) such watches shall constitute a day's work, except as otherwise provided in this rule.  On vessels crewed by a 6x6 watch, the Master and Chief Mate will stand their respective watch and shall have the responsibility for the safe navigation of the vessel during that time.

2.02    On a two (2) watch vessel, work will be performed in accordance with the following:

| | | |
|---|---|---|
| Master | 0600-1200 | 1800-2400 |
| Chief Mate | 0001-0600 | 1200-1800 |

On three (3) watch vessels, work will be performed in accordance with the following:

| | | |
|---|---|---|
| Master | 0800-1200 | 2000-2400 |
| Chief Mate | 0400-0800 | 1600-2000 |
| Second Mate | 0001-0400 | 1200-1600 |

20

1st Licensed Deck Officer – Floating
2nd Licensed Deck Officer – 0600-1200 – 1800-2400
3rd Licensed Deck Officer – 0000-0600 – 1200-1800

When deemed necessary by the Master, the Master will assume a non-watch standing role scheduling his 12 hours to suit operational need. The Mates will assume a two (2) watch schedule. If necessary, the Master can schedule a Mate to this non-watch standing role. In no event are the licensed deck officers to exceed 12 hours in any 24 hour period in compliance with Title 46 US Code. Masters and Mates standing a 6/6 will not work outside of their watch hours.

2.03    Nothing anywhere in this provision shall be construed as a guarantee of work - either days per month or hours per day. It is the intent of this rule that employees be paid for time worked and any attendant penalty or premium payments as provided herein.

2.04    It is understood and agreed that this rule and various other provisions of the past collective bargaining Agreement eliminates the "bimonthly guarantee" enjoyed by the Employer's deck officers. The Union has agreed to the removal of the guarantee only upon the Employer's assurances that it will not engage in practices which the "bimonthly guarantee" was intended to prevent, including seniority. It is agreed and understood that either party may request a meeting with the other party to discuss operating changes that may take place as a result of this modification. If the Union feels such changes adversely affect its members, they may pursue the matter through Rule 18, Settlement of Disputes, of the Master Agreement.

2.05    Crew ups and de-crews shall be performed at 1200 or 2400 hours. Deck Officers required to crew up prior to these specified times or de-crew after these specified times, shall receive a minimum of 2 hours at the penalty rate of pay or a maximum of ½ days pay.

2.06    When vessels are de-crewed and then re-crewed by the same Deck Officers within 24 hours, the Deck Officers' pay will continue straight through.

## RULE 3 - HOURS FOR SINGLE-CREW VESSELS

3.01    Twelve (12) consecutive hours shall constitute a shift. No two (2) man or three (3) man boat shall be dispatched on any job which will not permit the crew returning to base port within twelve (12) hours from the time the employees are required to report to work.

3.02    Nothing anywhere in this provision can be construed as a guarantee of work - either days per month or hours per day.

3.03    A Barge Master will be employed for harbor transits as deemed necessary and will be paid at their current deck officer rate of pay.  Eight (8) or twelve (12) hours shall constitute a shift.

## RULE 4 - RATES OF PAY

4.01    The rates of pay of all employees covered by this Agreement shall be as set forth below, effective April 1, 2000:

| Base Rates With Subsistence: | Per 12 Hr Day | Penalty Rate | In Lieu* |
|---|---|---|---|
| Master | $422.38 | $35.20 | 1.5%($6.34) |
| Chief Mate | $311.38 | $25.95 | 1.0%($3.11) |
| Second Mate | $282.23 | $23.52 | 1.0%($2.82) |
| Trainee Mate | $246.76 | $20.56 | |

*Paid only for each day worked.

| | Cargo/Lashing Rates (per hour) | $10.00 |
|---|---|---|

| Base Rates Without Subsistence: | Per 12 Hr Day | Per 8 Hr Day |
|---|---|---|
| Master | $426.48 | $284.32 |
| Chief Mate | $315.48 | $210.32 |
| Second Mate | $286.33 | $190.89 |
| Trainee Mate | $250.86 | $167.24 |

| Repair Rates: | | Per 8 Hr Day | Per Hour Regular |
|---|---|---|---|
| | Master | $256.00 | $32.00 |
| | Chief Mate | $188.72 | $23.59 |
| | Second Mate | $171.04 | $21.38 |
| | Trainee Mate | $149.52 | $18.69 |

(Retro payment will be on straight-time only.  In lieu will be paid upon ratification of the contact.)

Deck Officers who are training (i.e. onboard the vessel) to upgrade their positions in a supernumerary capacity only (extra deck officer to the crew), will be paid 5% less than the position to which they are upgrading, with the exception of the Trainee Mates.  For example:

> Second Mates training as Chief Mates will be paid 5% less than the Chief Mate.
> Chief Mates training as Masters will be paid 5% less than the Master.

4.02    It is agreed between the parties, that on January 1, 2001 and January 1 of each succeeding year, Masters and Mates represented by the Union shall be granted wage increases commensurate with the annual percentage increase granted to Administrative Masters and Mates.

4.03    Each paycheck or accompanying voucher shall include a clear breakdown showing the following:

> a.    Net pay
> b.    Gross pay
> c.    Itemized deductions

22

    d.    Holiday pay

    e.    Sick leave

4.04    Pay periods shall end on the 15th and on the last day of the month.  The Employer shall have eight (8) business days to process paychecks and make them available to the employee or designee.  Direct deposit into your bank, savings and loan or credit union will be available and the pay stubs will be sent via your usual check routing.

When a holiday falls within the payroll processing period, an additional day will be granted in that pay period to process payroll.

4.05    An allowance of fifty dollars ($50.00) per day will be paid to Masters and/or Mates when they are assigned to train non-bargaining unit or non-administrative deck officers in the operation of technically advanced tugs.

4.06    When emergency service is performed for the immediate safety of the vessel, tow or crew, or for incidents such as collision, breakdown, standing to, and rendering aid to another vessel or parties in distress, such additional hours worked shall be paid for at the penalty rate of pay.

**RULE 5 - CARGO HANDLING**

5.01    Crew members securing the movable equipment or cargo on unmanned barges shall receive the cargo rate of pay in addition to their regular scale while on or off watch with a one (1) hour minimum.  When crew members are required to handle oil cargo hose, one-half (½) hour cargo time shall be allowed for connecting and one-half (½) hour for disconnecting.

**RULE 6 - TRANSPORTATION AND TIME OFF IN HOME PORT**

6.01    The Employer shall designate the home port of each vessel.  Days off as provided forherein shall be given in the home port.  In the event conditions do not permit return of the vessel to home port to permit crew to take earned days off, the crew may be relieved at an out port provided transportation is furnished free of cost to and from home port, and the applicable wages are paid for all time spent traveling from any other port to the home port.

**RULE 7 - SICK LEAVE AND FUNERAL LEAVE**

7.01    All regular employees covered by this contract will earn sick leave credits consistent with those granted to Administrative Masters and Mates.

7.02    Employees are eligible for sick leave based upon their length of service with the Employer as follows:

| Length of Service | Sick Leave @ 100% Pay | Sick Leave @ 50% Pay |
|---|---|---|
| 1 - 12 months | 7 days | 77 days |
| 1 - 4 years | 14 days | 70 days |
| 5 - 9 years | 21 days | 63 days |
| 10+ years | 28 days | 56 days |

The employee's sick leave accrual becomes effective on their seniority date each year and may not be accumulated from year to year. Sick leave shall only be paid for the days an employee is scheduled to work, but is unable to work by reason of sickness or injury. Sick leave shall not be paid when sickness or injury is due to an employee's willful intent to injure himself or another, intoxication, or the use of drugs except where treatment for alcoholism or drug abuse at an authorized facility under a formal program is involved.

The employee's sick leave rate will be based on the last pay rate under which the employee worked. The amount of sick leave pay will be reduced by benefits received from Social Security, Worker's Compensation (including Jones Act benefits), and state/federal disability plans to prevent payment exceeding the employee's regular pay.

Any employee claiming benefits must notify his supervisor as soon as he becomes ill, injured, or hospitalized. The Employer may request, at its option, a verifying statement from the employee's doctor to support sick leave claims.

7.03    Funeral leave up to three (3) days in any calendar year may be claimed and taken to attend the funeral of a member of the employee's immediate family. "Immediate family" includes the employee's spouse, children, parents, brothers or sisters, grandparents, grandchildren, and parents of spouse. Funeral leave will only be paid for the days an employee is scheduled to work. It will be paid at the pay rate under which the employee last worked.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the ____/____ day of _Uugust_, 2000, between:

CROWLEY MARINE SERVICES, INC.

INTERNATIONAL ORGANIZATION OF
MASTERS, MATES AND PILOTS,
Pacific Maritime Region

By: Thomas P. Baldwin

By: Steven J. Demeroutis

By: James J. Macaulay

By: _____

24

## LETTER OF UNDERSTANDING

A Labor-Management Committee shall be formed for the purpose of making recommendations on means to improve operating efficiencies, accommodations/improvements and safety on vessels.

This committee will also meet to review and discuss law, rule and/or regulation changes that may effect the 12-hour rule.

This committee is to be comprised of two (2) representatives of the employer and two (2) representatives of the employee group and will meet no less than quarterly.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the _____1_____ day of _August_, 2000, between:

CROWLEY MARINE SERVICES, INC.

INTERNATIONAL ORGANIZATION OF MASTERS, MATES AND PILOTS, Pacific Maritime Region

By: Thomas P. Baldwin

By: Steven J. Demeroutis

By: James J. Macaulay

By:

## LETTER OF UNDERSTANDING

If a currently assigned Inside Deck Officer's (one who has consistently worked under the terms and conditions of the Inside Towing Agreement) Health and Benefit Plan bi-monthly contributions (Master Rule 15.02) and Pension Plan bi-monthly contributions (Master Rule 16.01) are negatively impacted as a result of the elimination of Vacation (Inside Rule 6), the Company will, if deemed necessary, bridge the gap for said individual(s).

The purpose of this Letter of Understanding is to ensure that no currently assigned Inside Deck Officer who has consistently worked under the terms and conditions of the Inside Towing Agreement, will lose Health and Benefit Plan or Pension Plan bi-monthly contributions as a result of the elimination of Vacation (Inside Rule 6).

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed as of the _____/_____ day of _August_, 2000, between:

CROWLEY MARINE SERVICES, INC.

By: Thomas P. Baldwin

By: James J. Macaulay

INTERNATIONAL ORGANIZATION OF
MASTERS, MATES AND PILOTS,
Pacific Maritime Region

By: Steven J. Demeroutis

By:

26