Exhibit 1 Page 1 of 3

**LAW OFFICE OF MICHAEL J. PATTERSON**
810 W. 2ND AVENUE
ANCHORAGE, ALASKA 99501
SBN: 7806051   PHONE: 907-276-7966   FAX: 907-276-0479

Heather L. Gardner, Esq.
Michael J. Patterson, Esq.
810 W. Second Avenue
Anchorage, Alaska 99501
Phone: (907)276-7966
Fax: (907)276-0479

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

GARY J. CROCHET, )
)
Plaintiff, )
) **AFFIDAVIT OF GARY CROCHET**
v. )
)
CROWLEY MARINE )
SERVICES, INC. )
)
Defendant. ) Case No. A05- 288 CV (RRB)
_____)

State of Alaska )
)ss.
THIRD JUDICIAL DISTRICT )

Gary Crochet, duly sworn, deposes and states as follows:

1. I am the Plaintiff in the above numbered matter.

2. On October 27, 2004, I had a work related injury when I slipped and fell on Barge 450-1.

3. On 11/1/04, I had radiating left arm pain when examined at Valdez Regional Health Authority. Crowley was told that it was a work related injury, and on 11/1/04 I was released "not fit for full duty." (Exhibit #1)

4. In November, 2004, before I was suspended, I did not steal any "stores or food" from the Barge.

5. I sent extra stores into the office because there was no room on the Barge.

Affidavit of Gary Crochet - Page 1 of 3
Crochet v. Crowley
Case No.: A05-288 CV (RRB)

Exhibit ___ Page 2 of 3

Affidavit of Gary Crochet - Page 2 of 3
Crochet v. Crowley
Case No.: A05-288 CV (RRB)

6. I filed a claim with the Alaska Department of Labor. A hearing was held on January 21, 2005. A copy of the Tribunal's decision is attached. At the hearing, the Tribunal decided that the evidence did not support the conclusion that I misappropriated company food. (Exhibit #2).

7. I had back surgery in 2002 from a 2000 work related injury, and other medical problems after I returned to work. After my appendectomy, before this injury, I was told by Crowley management that my medical problems were becoming a concern to "Crowley", and my name was tattooed on managment's forehead.

8. I am unable to work at the present time and anticipate that I will have neck surgery.

FURTHER AFFIANT SAYETH NAUGHT.

Dated this 17 day of April, 2006.

_____
Gary Crochet, Plaintiff

SUBSCRIBED AND SWORN to before me this 17th day of April, 2006 at Anchorage, Alaska.

_____
Notary Public in and for the State of Alaska
My Commission Expires: 08-05-06

**LAW OFFICE OF MICHAEL J. PATTERSON**
810 W. 2ND AVENUE
ANCHORAGE, ALASKA 99501
SBN: 7806051   PHONE: 907-276-7966   FAX: 907-276-0479



LAW OFFICE OF MICHAEL J. PATTERSON
810 W. 2ND AVENUE
ANCHORAGE, ALASKA 99501
SBN: 7806051 PHONE: 907-276-7966 FAX: 907-276-0479

I hereby certify that a copy of the foregoing document was hand-delivered/mailed to the following on the 18th day of April, 2006:

Douglas R. Davis, Esq.
1029 W. Third Avenue Suite 650
Anchorage, Alaska 99501

by: Joyce Gardner

Exhibit 1
Page 3 of 3

# CROWLEY
## CLINIC REFERRAL FORM
[Form to be completed by Supervisor/Master/HR or ESQA Rep.]

| EMPLOYEE NAME: | DOB: | SSN#: | JOB TITLE: | WORK LOCATION: |
|---|---|---|---|---|
| Rochet, Gary | 12/12/55 | 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 | QA MMM Bates 4520 | 4520-1 |

EXAM DATE/TIME:                                              MEDICAL FACILITY:

| √ | EXAM/SERVICE | Due Date | √ | EXAM/SERVICE |
|---|---|---|---|---|
|   | AUDIOGRAM-BASELINE (OSHA) - (First time) |   |   | IMMUNIZATION (DESCRIBE) |
|   | AUDIOGRAM-ANNUAL (OSHA) |   |   | PHYSICAL-PRE-EMPLOYMENT (A) |
|   | BENZENE EXAM-BASELINE (First time) |   |   | PHYSICAL-PRE-EMPLOYMENT (B)- Hepb shots |
|   | BENZENE EXAM-ANNUAL |   |   | RESPIRATORY QUESTIONNAIRE |
|   | HEPATITIS B VACCINATION- SHOT# |   |   | TETANUS SHOT |
|   | PHYSICAL-ANNUAL (DESCRIBE) |   |   | OTHER (Describe) |

| √ | REASON FOR DRUG/ALCOHOL TEST | Due Date | √ | DRUG/ALCOHOL TESTING (Reason for testing must be completed) |
|---|---|---|---|---|
|   | POST ACCIDENT/SERIOUS MARINE INCIDENT |   |   | BREATH ALCOHOL TEST-FORENSIC- (NON-DOT) (Pre-Employment, Pre-access, Admin reasonable suspicion/cause) |
|   | PRE-ACCESS |   |   |   |
|   | PRE-EMPLOYMENT |   |   | BREATH ALCOHOL TEST-FEDERAL-(DOT) (FHWA & USCG-Post Accident, Reasonable suspicion/cause only) |
|   | RANDOM |   |   |   |
|   | REASONABLE SUSPICION/CAUSE |   |   | DRUG SCREEN-FEDERAL- (DOT) |
|   | RETURN TO DUTY |   |   | DRUG SCREEN-FORENSIC- (NON-DOT) (5 panel): (Vessel pre-employment USCG, FHWA Only) |
|   | OTHER- Periodic, MRO follow-up, DOD, etc |   |   | (5 Panel Only)- (Admin pre-employment, Pre-access, DOD) |

| √ | INJURY/ILLNESS |
|---|---|
| X | FIT FOR DUTY (follow-up)- Work Related (injury) illness |
|   | FIT FOR DUTY-Non-Work Related Injury |

| * | SPECIAL INSTRUCTIONS/COMMENTS: |
|---|---|
|   | [signature] |

REFERRED BY (Print Name):          PHONE NO:          DATE: 11/2/04

SEE BACK OF FORM FOR IMPORTANT BILLING AND DRUG TESTING INSTRUCTIONS

Exhibit A-1  Page 1 of 3

White - Employee/Applicant take to clinic.   (2) Yellow-Homeport Marine Ops   (3) Pink- Sr. Administrator- Jacksonville-HR

Form No. CC01 Rev. 4/1/00

**Valdez Regional Health Authority, Inc.**

911 Meals Avenue • P.O. Box 550 • Valdez, AK 99686
907-835-2249 • Fax 907-835-3735

2315

Date 11-1-04

Time 2315

Chief Complaint (L) arm numbness

| Current Medications Zanaflex | Allergies Codeine | Mode of Arrival: Ambulance Stretcher Carried Private Vehicle Wheelchair Walked |
|---|---|---|

| Temp | Pulse | Resps | BP | SPO2 | Wt | LMP | FHT | Last Tetanus | VA |
|---|---|---|---|---|---|---|---|---|---|
| 97 | 93 | 20 | 151/93 | | 182 | — | — | — | yes |

**Nursing Assessment** (L) arm tingling & numbness all the way to the fingers. Sharp shooting pain when looking to the left. 10/29 began to have (L) leg pain that resolved. DC ambulatory @ 0050 c Rx & ER PACS [signature]

**Time Physician Notified** Kohn T C L G

**Time Physician arrived in ER** 2330

| Physician's Record | Physician's Orders |
|---|---|
| S: 48 yom woke 10-29 with severe (L) arm/hand pain & numbness. Hx lumbar discectomy 2000, pt Dr Klimow Anchorage. Sx reproduced by turning head to (L). 4 days ago had (L) ant thigh pain & numb, resolved. Unable to lift w (L) arm. Ø injury. Ø bowel/bladder incont. Works on fishing boat. Ø c/o chest pain or premeds | Flexeril prepack 10mg p.o. 8° prn #30 (thirty) prepack Script #157 |
| O: Grimacing. Neck supple Ø spine tender. Pain reproduced by axial loading. HEENT clear. Lungs: CTA (L) ROM, hand grasp, arm flex/ext 5/5 (B). Biceps, knees, ankles 2/2 (B). Ø back tender FROM shoulder, elbow | Ibuprofen 800mg one tab po x 1, 8mg #4 |
| A: Radicular pain (L) arm. | Percocet 325/5 2 tabs po now, then Disp 4 tabs prepack 1-2 po q4h — Script #150 |
| P: D/W Health Force MD — not fit for full duty. Make next available appt Dr Klimow. Heat, ice, no lifting (L) arm, return if pain worsens | |

Physician's Signature [signature] Nurse's Signature [signature] RN

Disposition 0050 to home

Discharge Instruction Sheet Given: [signature]

DV Screening ☐ Yes ☐ No
☐ DV+ ☐ DV ☐ DV?

Name Crochet Gary

Outpatient Number CN #10184

Exhibit 1-B
Page 2 of 3

\Forms\Emergency Department Record.doc Form # 001-26

Patient Name Crochet, Gary J.

11/2/04. Pt here. Was seen in ER
480) last nite by Dr. Kohn. Crowley
concerned about him driving
Wt 190. to Anch. had ī Percocet at
110/60. 1 AM last nite. Need MRI? MP
P-68 Pt feels he has pinched Nerve
Ⓛ arm and fingers went Numb

Valdez Medical Clinic

Gary Crochet

~~11/1/2004~~ Error 11/2/04

48 years 11 months

Subjective Patient with pain that runs down left arm.

Past hx
Back pain 1 year ago received muscle relaxers
Negative PPD this year. 729.2 Neuralgia, radiculitis
724.2 Low back pain
Patient is unfit for duty at this point in terms of working on ship.
Because of the sclerotic lesion at L2 I have recommended that he get the MRI of his L spine earlier than is usual.11/20/2000

Family Hx None

Meds None

Habits SMOKER AT 1/2 PPD

Allergies Codeine

Objective

HEENT PERLA, EOM intact, Conjunctiva non inflamed, oropharynx clear, normal dentition, TM's clear, neck supple, no adenopathy, normal thyroid.
Negative Apert's syndrome
Heart RRR, no murmur. PMI non displaced.
Lungs No respiratory distress, CTA, no rales, wheezes, rubs.

A/P **Mild cervical radiculopathy**

MRI when patient off work

VALDEZ MEDICAL CLINIC

#13238C — ©Medical Arts Press® 1-800-328-2179

Exhibit 1-C
Page 3 of 3

ALASKA DEPARTMENT OF : OR
AND WORKFORCE DEVELOPMENT
EMPLOYMENT SECURITY DIVISION
P.O. BOX 107023
ANCHORAGE, ALASKA 99510-0723

## APPEAL TRIBUNAL DECISION

**Docket No. 05 0002**  **Hearing Date:** January 21, 2005

**CLAIMANT:**  **EMPLOYER:**

GARY J CROCHET  CROWLEY MARINE SVCS
990 N TOM WATSON PL  UC EXPRESS
WASILLA AK 99654  POB 283
                  SAINT LOUIS MO 63166

**CLAIMANT APPEARANCES:**  **EMPLOYER APPEARANCES:**

GARY J CROCHET  Lee Aglin
                Frosty Leonard

**ESD APPEARANCES:**

None

## CASE HISTORY

The interested employer, Crowley Marine Services Inc., by and through it's representative of record, UC Express, appealed a December 2, 2004 determination that holds the disqualifying provisions of AS 23.20.379 do not apply to Mr. Crochet's separation from work. The issue is whether the employer discharged Mr. Crochet for misconduct connected with his work.

## FINDINGS OF FACT

Mr. Crochet began working for the employer in 1994. His last day of work was November 11, 2004. At the end of his employment he worked as mate on a barge. The work was located near Valdez, Alaska.

Mr. Crochet was responsible for supplying the barge with food. Crews rotated regularly. Depending on weather conditions the trip into port was about four hours.

On his last day of work, the ship, the "Endurance," with supplies and rotating new crewmembers was arriving, and crewmembers were rotating off the barge. Mr. Crochet determined that the freezer onboard the ship could not hold the existing food and also the supplies that were about to arrive.

GARY J CROCHET
Docket 05 0002
Page 2

The employer does not have a written policy concerning excess stores. Mr. Crochet testified that he determined to have the excess supply of perishables distributed by the employer's Valdez office. To that end, he had one of the crewmembers rotating off the barge package up about 35 lbs of meat and shrimp from one of the freezer shelves for delivery to the office. The items were placed in a box. Mr. Crochet also sent along with the crewmember a box of fish that he had himself caught to be taken to the place he was staying in Valdez.

The Endurance left the barge in the early morning of November 11, 2004. The other crewmember had the two boxes with him.

At some point, the employer got an anonymous tip that ship food supplies were being stolen off the vessel. Mr. Frosty Leonard, company director of operations in Valdez, met the Endurance when it arrived at the company dock. The crewmember with whom Mr. Crochet had entrusted the fish and food was stopped and questioned about his baggage. It was not clear where he was headed.

He informed Mr. Leonard that he had a box of fish for Mr. Crochet and a box of food for the office. The office has a small freezer.

Later that morning, Mr. Crochet was called by satellite phone by Mr. Aglin, the company director of labor relations, and Mr. Leonard. Mr. Crochet had to go to a nearby ship to use their phone.

Mr. Crochet was asked about what he had sent along with the crewmember. He advised them that he had sent a box of fish and also a box of food for the office. He did not advise the employer that he had completed any ship's log entry concerning the food shipment. He was advised to remain on board the second vessel while an investigation continued; Mr. Aglin and Mr. Leonard would call him back in 40 minutes.

Mr. Crochet contended that the phone call was full of static, and that the connection was broken several times. He further contended that he did not hear the direction to stay on board the second vessel.

After the call and against instructions, Mr. Crochet returned to the barge. According to the employer, another crewmember sitting having lunch witnessed Mr. Crochet take the log and modify the 1:30 a.m. entry to include, "Hernandez to office w/over order stores." (Exhibit 10 page 8).

Mr. Crochet disputes the employer's account. He acknowledges returning to the barge (for cigarettes) but insists that he stayed for a very short period of time (three minutes) before returning to the second vessel to await the employer's second

GARY J CROCHET
Docket 05 0002
Page 3

call. He insists that the other crewmember was not sitting at the table eating lunch when he returned but was watching TV. He also insists that he did not modify the log with a subsequent entry concerning the return of food to the office.

The employer counters that the log entry concerning the return of food to the office is in different ink than the rest of the entry. They assert also that the crewmember who had been bringing the food back had, while heading over to land, told the Endurance captain that he had two boxes for Mr. Crochet. Mr. Crochet had no explanation for this statement. The employer also asserted that there were other vessels in the vicinity of the barge that had freezers that could have held the excess food. Mr. Crochet admitted he did not think about this possibility.

This was a union position for Mr. Crochet and he grieved his discharge. As of the date of this hearing, that grievance is still pending.

**PROVISIONS OF LAW**

AS 23.20.379 provides, in part:

(a) An insured worker is disqualified for waiting-week credit or benefits for the first week in which the insured worker is unemployed and for the next five weeks of unemployment following that week if the insured worker...

(2) was discharged for misconduct connected with the insured worker's last work....

8 AAC 85.095 provides, in part:

(e) A discharge for an act that constitutes commission of a felony or theft will result in a disqualification for benefits under AS 23.20.379(e) if

(1) charges are filed against the claimant or the employer has reported the act to the appropriate law enforcement authority;

(2) the felony or theft is "misconduct connected with the insured worker's work" under (d) of this section; and

(3) a preponderance of the evidence establishes that

(A) the claimant committed the act; and

(B) the act was not justified under AS 11.81.300 - 11.81.450.

   (f)  An acquittal, plea to a lesser charge, or dismissal of charges does not prevent a disqualification for benefits under (e) of this section, if a preponderance of evidence supports that disqualification.

   (g)  For purposes of this section

       (1)  "felony" means an act classified as a felony in AS 11; and

       (2)  "theft" means an act described in AS 11.46.100, if the value of the property or service is $50 or more.

   (h)  "Misconduct connected with the insured worker's work" as used in AS 23.20.379(a)(2) means

       (1)  a claimant's conduct on the job, if the conduct shows a willful and wanton disregard of the employer's interest, as a claimant might show, for example, through gross or repeated negligence, willful violation of reasonable work rules, or deliberate violation or disregard of standards of behavior that the employer has the right to expect of an employee; willful and wanton disregard of the employer's interest does not arise solely from inefficiency, unsatisfactory performance as the result of inability or incapacity, inadvertence, ordinary negligence in isolated instances, or good faith errors in judgment or discretion….

## CONCLUSION

The Employment Security Division's Benefit Policy Manual, Section MC 140, states in part:

   A worker who is discharged for stealing or improperly acquiring property is discharged for misconduct. The problem may lie in determining whether the act complained of was in fact done by the worker. Often, the only evidence of theft is that the property is found to be in the possession of a worker who is not authorized to have it. In such cases, it is the worker's burden to show how and why it was acquired….

In Rednal, Comm'r Dec. 86H-UI-213, 8/25/86, the Commissioner states in part:

   When a worker has been discharged, the burden of

Exhibit 2-D
Page 4 of 6

GARY J CROCHET
Docket 05 0002
Page 5

persuasion rests upon the employer to establish that
the worker was discharged for misconduct in connection
with the work. In order to bear out that burden, it is
necessary that the employer bring forth evidence of a
sufficient quantity and quality to establish that
misconduct was involved...."

In Mendonsa, Comm'r Dec. 04 0577, June 8, 2004, the Commissioner
held in part:

"When a worker has been discharged, the burden of
persuasion rests upon the employer to establish that
the worker was discharged for misconduct in connection
with the work. In order to bear out that burden, it is
necessary that the employer bring forth evidence of a
sufficient quantity and quality to establish that
misconduct was involved." Rednal, Comm'r Dec. 86H-UI-
213, 8/25/86.

The employer had a right to prevent theft. However, the
crewmember heading off the dock with the two boxes of fish and
food was intercepted before it was clear he was not heading to
the office. Furthermore, the allegation that Mr. Crochet made
exculpating amendments to the ship's log after being confronted
with charges of possible theft has not been proven by any first-
hand testimony. Also, statements allegedly made by the crewmember
taking the boxes off the barge to the Endurance captain
incriminating Mr. Crochet are not supported by direct testimony
either. Finally, Mr. Crochet denies stealing food from the
employer.

The evidence does not support the conclusion that Mr. Crochet
misappropriated company food. A disqualification is not in order.

**DECISION**

The December 2, 2004 determination is **AFFIRMED**. Mr. Crochet
remains allowed benefits beginning with the week ending November
20, 2004 through the week ending December 25, 2004. Mr. Crochet's
maximum benefit amount is not reduced by three times his weekly
benefit amount, and he may still be eligible for extended
benefits.

**APPEAL RIGHTS**

This decision is final unless an appeal is filed to the Commissioner of Labor and Workforce Development within **30 days** after the decision is mailed to each party. The appeal period may be extended only if the appeal is delayed for circumstances beyond the party's control. A statement of appeal rights and procedures is enclosed.

Dated and Mailed in Anchorage, Alaska, on January 28, 2005.

Michael Swanson, Hearing Officer