ALASKA DEPARTMENT OF : OR
AND WORKFORCE DEVELOPMENT
EMPLOYMENT SECURITY DIVISION
P.O. BOX 107023
ANCHORAGE, ALASKA 99510-0723


## APPEAL TRIBUNAL DECISION

**Docket No.** 05 0002                         **Hearing Date:** January 21, 2005

**CLAIMANT:**                                  **EMPLOYER:**

GARY J CROCHET                                 CROWLEY MARINE SVCS
990 N TOM WATSON PL                            UC EXPRESS
WASILLA AK  99654                              POB 283
                                               SAINT LOUIS MO  63166


**CLAIMANT APPEARANCES:**                      **EMPLOYER APPEARANCES:**

GARY J CROCHET                                 Lee Aglin
                                               Frosty Leonard

**ESD APPEARANCES:**

None

### CASE HISTORY

The interested employer, Crowley Marine Services Inc., by and through it's representative of record, UC Express, appealed a December 2, 2004 determination that holds the disqualifying provisions of AS 23.20.379 do not apply to Mr. Crochet's separation from work. The issue is whether the employer discharged Mr. Crochet for misconduct connected with his work.

### FINDINGS OF FACT

Mr. Crochet began working for the employer in 1994. His last day of work was November 11, 2004. At the end of his employment he worked as mate on a barge. The work was located near Valdez, Alaska.

Mr. Crochet was responsible for supplying the barge with food. Crews rotated regularly. Depending on weather conditions the trip into port was about four hours.

On his last day of work, the ship, the "Endurance," with supplies and rotating new crewmembers was arriving, and crewmembers were rotating off the barge. Mr. Crochet determined that the freezer onboard the ship could not hold the existing food and also the supplies that were about to arrive.



Exhibit 5
Page 1 of 6

GARY J CROCHET
Docket 05 0002
Page 2

The employer does not have a written policy concerning excess stores. Mr. Crochet testified that he determined to have the excess supply of perishables distributed by the employer's Valdez office. To that end, he had one of the crewmembers rotating off the barge package up about 35 lbs of meat and shrimp from one of the freezer shelves for delivery to the office. The items were placed in a box. Mr. Crochet also sent along with the crewmember a box of fish that he had himself caught to be taken to the place he was staying in Valdez.

The Endurance left the barge in the early morning of November 11, 2004. The other crewmember had the two boxes with him.

At some point, the employer got an anonymous tip that ship food supplies were being stolen off the vessel. Mr. Frosty Leonard, company director of operations in Valdez, met the Endurance when it arrived at the company dock. The crewmember with whom Mr. Crochet had entrusted the fish and food was stopped and questioned about his baggage. It was not clear where he was headed.

He informed Mr. Leonard that he had a box of fish for Mr. Crochet and a box of food for the office. The office has a small freezer.

Later that morning, Mr. Crochet was called by satellite phone by Mr. Aglin, the company director of labor relations, and Mr. Leonard. Mr. Crochet had to go to a nearby ship to use their phone.

Mr. Crochet was asked about what he had sent along with the crewmember. He advised them that he had sent a box of fish and also a box of food for the office. He did not advise the employer that he had completed any ship's log entry concerning the food shipment. He was advised to remain on board the second vessel while an investigation continued; Mr. Aglin and Mr. Leonard would call him back in 40 minutes.

Mr. Crochet contended that the phone call was full of static, and that the connection was broken several times. He further contended that he did not hear the direction to stay on board the second vessel.

After the call and against instructions, Mr. Crochet returned to the barge. According to the employer, another crewmember sitting having lunch witnessed Mr. Crochet take the log and modify the 1:30 a.m. entry to include, "Hernandez to office w/over order stores" (Exhibit 10 page 8).

Mr. Crochet disputes the employer's account. He acknowledges returning to the barge (for cigarettes) but insists that he stayed for a very short period of time (three minutes) before returning to the second vessel to await the employer's second

call. He insists that the other crewmember was not sitting at the table eating lunch when he returned but was watching TV. He also insists that he did not modify the log with a subsequent entry concerning the return of food to the office.

The employer counters that the log entry concerning the return of food to the office is in different ink than the rest of the entry. They assert also that the crewmember who had been bringing the food back had, while heading over to land, told the Endurance captain that he had two boxes for Mr. Crochet.  Mr. Crochet had no explanation for this statement. The employer also asserted that there were other vessels in the vicinity of the barge that had freezers that could have held the excess food. Mr. Crochet admitted he did not think about this possibility.

This was a union position for Mr. Crochet and he grieved his discharge. As of the date of this hearing, that grievance is still pending.

## PROVISIONS OF LAW

AS 23.20.379 provides, in part:

    (a) An insured worker is disqualified for waiting-week credit or benefits for the first week in which the insured worker is unemployed and for the next five weeks of unemployment following that week if the insured worker…

        (2) was discharged for misconduct connected with the insured worker's last work….

8 AAC 85.095 provides, in part:

    (e) A discharge for an act that constitutes commission of a felony or theft will result in a disqualification for benefits under AS 23.20.379(e) if

        (1) charges are filed against the claimant or the employer has reported the act to the appropriate law enforcement authority;

        (2) the felony or theft is "misconduct connected with the insured worker's work" under (d) of this section; and

        (3) a preponderance of the evidence establishes that

            (A) the claimant committed the act; and

            (B) the act was not justified under AS 11.81.300 - 11.81.450.

Exhibit _____

Exhibit 5
Page 3 of 12

GARY J CROCHET
Docket 05 0002
Page 4

   (f)   An acquittal, plea to a lesser charge, or dismissal of charges does not prevent a disqualification for benefits under (e) of this section, if a preponderance of evidence supports that disqualification.

   (g)   For purposes of this section

        (1)   "felony" means an act classified as a felony in AS 11; and

        (2)   "theft" means an act described in AS 11.46.100, if the value of the property or service is $50 or more.

   (d)   "Misconduct connected with the insured worker's work" as used in AS 23.20.379(a)(2) means

        (1)   a claimant's conduct on the job, if the conduct shows a wilful and wanton disregard of the employer's interest, as a claimant might show, for example, through gross or repeated negligence, wilful violation of reasonable work rules, or deliberate violation or disregard of standards of behavior that the employer has the right to expect of an employee; wilful and wanton disregard of the employer's interest does not arise solely from inefficiency, unsatisfactory performance as the result of inability or incapacity, inadvertence, ordinary negligence in isolated instances, or good faith errors in judgment or discretion....

**CONCLUSION**

The Employment Security Division's Benefit Policy Manual, Section MC 140, states in part:

> A worker who is discharged for stealing or improperly acquiring property is discharged for misconduct. The problem may lie in determining whether the act complained of was in fact done by the worker. Often, the only evidence of theft is that the property is found to be in the possession of a worker who is not authorized to have it. In such cases, it is the worker's burden to show how and why it was acquired....

In <u>Rednal</u>, Comm'r Dec. 86H-UI-213, 8/25/86, the Commissioner states in part:

> When a worker has been discharged, the burden of

Exhibit _____

Exhibit 5
Page 4 of 6

> persuasion rests upon the employer to establish that
> the worker was discharged for misconduct in connection
> with the work. In order to bear out that burden, it is
> necessary that the employer bring forth evidence of a
> sufficient quantity and quality to establish that
> misconduct was involved....

In Mendonsa, Comm'r Dec. 04 0577, June 8, 2004, the Commissioner held in part:

> "When a worker has been discharged, the burden of
> persuasion rests upon the employer to establish that
> the worker was discharged for misconduct in connection
> with the work. In order to bear out that burden, it is
> necessary that the employer bring forth evidence of a
> sufficient quantity and quality to establish that
> misconduct was involved." Rednal, Comm'r Dec. 86H-UI-
> 213, 8/25/86.

The employer had a right to prevent theft. However, the crewmember heading off the dock with the two boxes of fish and food was intercepted before it was clear he was not heading to the office. Furthermore, the allegation that Mr. Crochet made exculpating amendments to the ship's log after being confronted with charges of possible theft has not been proven by any first-hand testimony. Also, statements allegedly made by the crewmember taking the boxes off the barge to the Endurance captain incriminating Mr. Crochet are not supported by direct testimony either. Finally, Mr. Crochet denies stealing food from the employer.

The evidence does not support the conclusion that Mr. Crochet misappropriated company food. A disqualification is not in order.

### DECISION

The December 2, 2004 determination is **AFFIRMED**. Mr. Crochet remains allowed benefits beginning with the week ending November 20, 2004 through the week ending December 25, 2004. Mr. Crochet's maximum benefit amount is not reduced by three times his weekly benefit amount, and he may still be eligible for extended benefits.

GARY J CROCHET
Docket 05 0002
Page 6

## APPEAL RIGHTS

This decision is final unless an appeal is filed to the Commissioner of Labor and Workforce Development within **30 days** after the decision is mailed to each party. The appeal period may be extended only if the appeal is delayed for circumstances beyond the party's control. A statement of appeal rights and procedures is enclosed.

Dated and Mailed in Anchorage, Alaska, on January 28, 2005.

*/s/ Michael Swanson*
Michael Swanson, Hearing Officer

Exhibit _____

Exhibit 5
Page 6 of 6